All rise. The Illinois Appellate Court is now in session. The Honorable Justice Raymond W. Mitchell is presiding. Good morning, folks. Let's be seated. I'll call our clerk and call our case for today. 1-24-1645, Andrea Muller v. Fertility Centers of Illinois Okay. Good morning, counsel. We've reviewed the briefs and the record of the case. You can certainly take that into account in your remarks today. I guess I should ask, how do you want to divide your time? Have you reached an agreement? We typically do 20, 20 and 5 minutes for rebuttal, but Mr. Griffin, what's the plan? I'm going to go first and see how far I can go. Obviously, once the argument is loud, I'm in a different position than that. Sure, sure. So how much time do you think you need? I'm thinking 10 minutes. Okay, that's fair. You know we're not super strict on that. Okay, with that... I think, depending on the urgency, I think I'll call it 15 minutes for the argument. Great, great. Short arguments win cases, right? So with that, counsel, whenever you're ready. Good morning, Your Honors. Counsel, Honorable Justices, we are here today to present the case for my client, Andrea Miller. My name is Ken Nazarian. I will be presenting the argument on behalf of the plaintiff in this case and the arguments in favor of the reversal of Judge Essrig's dismissal with prejudice of her complaint in chief. Your Honors, we are here today to answer a question. The question is whether or not a fertility center owes a duty to a mother to protect and ensure the protections of the embryos that she has entrusted them with the custody of. In this case, you are obviously all familiar with the facts since you've reviewed my briefs, but the question of duty still remains. In Illinois, we are a fact-pleading jurisdiction, Your Honors. But despite it being a fact-pleading jurisdiction, and we were very explicit in all of the facts that we alleged, in this case, Judge Essrig still dismissed our complaint with prejudice with only one attempt to resolve or amend that pleading with regard to negligence and breach of fiduciary duty. We believe this was a miscarriage of justice, and we believe that the duty requirements in Illinois allows for the pleading to stand. In this case, we have my client, Andrea Miller, who goes to FCI for fertility treatments. She goes through IVF. She has signed a consent. She has signed a paper with her husband giving her consent to have a fertilized embryo. That embryo is then kept in the care of FCI and the other defendants, Ganni and Cryovolt. Mind you, all of those institutions are within one address. They are all kind of under one umbrella, which is why they are all here today. With regard to the duty, my client enters their facility and expects and trusts that they will keep her wishes intact. She goes through the consent form. The consent form, which is arguably a writing, has very explicit instructions in the event of a divorce or dissolution of the marriage in that all parties have signed and agreed that my client, Andrea Miller, would be the sole custodian and owner of those embryos. However, once Robert, her husband, withdrew his consent, which under the law means that he would not be a parent and he would not have any right to those embryos at that point, FCI still said we are not going to do anything without further order of court. In the divorce court, the court reviewed the... You eventually, your client won. Yes, sir. Right? But she had to have a showing of hardship. It was not merely based on her position with FCI, the trust that she imposed upon them, and that she asked them to keep protection over her embryos. Rather, it was based on her hardship. She had to hire experts. She had to take testimony. She had to get witnesses. She had to go through years of analysis and court proceedings in order to gain ownership of those embryos. But how could they keep someone else from initiating this litigation? Your Honor, they cannot keep someone from initiating the litigation, but they could have short-circuited it. Yeah, I know that. She could have had a separate agreement with her ex-husband. That would have been the easiest way to short-circuit. You're correct, Your Honor. She could have had a separate agreement, but why would she need a separate agreement when she already had an agreement? Well, she already had a separate agreement.  Discouraged litigation. You could have had an agreement with a fee-shifting clause, right? That tends to discourage lawsuits. A fee-shifting provision, however, would not obviate the damage in this case. I don't believe even that would have obviated the damage in this case because the damage is the lost time. Beyond even the financial issue, the problem is lost time. When she entrusted herself to the care of FCI, she believed that that was sufficient, that everything in there outlined what she needed. She had a signed writing that was signed by her and Robert and witnessed by a member of FCI. She believed that that was sufficient. She believed that that information, that that writing should have carried through, but it did not. Well, ultimately it did. So what you really say, and what you alleged, is she had a right to immediate ownership. Ownership without anybody contesting it. And that is a really high burden. Assuming they have some duty, the duty to protect her from any context to her right. That's really what you're suggesting was their duty. I'm suggesting not an immediate burden, but a swift. I'm not an immediate ownership, but a swift ownership. Your Honor, the one issue here is that there was never an order by the divorce court preventing FCI from moving forward with giving my client an embryo. There was no TRO. There was nothing that would prevent them. They on their own said, we're not going to do anything without further order of court. Because they were aware of the divorce proceeding. Now, they had an order, or they had an agreement. They had a signed writing by my client. They had my client's understanding that she would be the owner of the embryos. She made that request. It was there. As a relation judge, it wasn't really apparent to him what that agreement meant, right? Because he had a view of it at the outset that changed over time. Absolutely, Your Honor. I don't believe he ever found there to be an agreement. My understanding is that he discredited the FCI consent form and then went to a hardship decision. So he evaluated both positions of both parents and then made that determination of hardship for my client to say, she deserves these embryos because she is unable to have children, because she has age-related factors. These were all taken into account. Had the form been sufficient and had the divorce court seen it and said, yes, this is a very clear writing that imposes and allows ownership under this provision, under this portion of the consent form signed by both parties, then he would have ordered that, and he would have given my client ownership of those embryos without a hardship. However, that was not found to be sufficient. So the question is, how does it become sufficient? I believe that that burden is very easy. They only instituted one FCI consent form for a annual treatment, for a year's worth of treatment. Instead of having her come in and re-sign, along with her partner, additional consent forms with each procedure, with each implantation, with each IVF treatment, they chose not to do that. They only had one annual consent form signed. Now, every hospital around the country and everyone knows, when you receive treatment for anything, you have a new consent form. You're always signing a consent form. If you didn't consent to a procedure, they take you out of an operating room and get consent, or they get consent from a next of kin. It's basic medical knowledge across the country. But in this case, FCI did not do that. They chose not to do that. So why did they choose not to do that? There are two different consent forms. I mean, you're referring to consents to treat that, you know, the medical professionals have you sign each time they're going to treat you. But that's different than the issue here. The issue here is the, I guess, the portion of the form that says that, you know, in the event of the divorce that the embryos would belong to the plaintiff. And I think those are two different issues. Wouldn't you agree? I would disagree respectfully, Your Honor, solely because the consent form was all-encompassing. It was a single consent form specifically for IVF treatment. Now, in this case, there were multiple rounds of IVF treatment with multiple instances of fertilized eggs. So each IVF treatment resulted in a different batch of embryos that was being created. The first, which was the initial consent form, had no viable embryos and nothing was done with them. It was the second that is at issue in this case. The second was never, a new consent was never signed, so there was additional treatment to my client. There was additional time that had elapsed between those. I believe it was three or four months between those treatments. As a result, you have an entirely new treatment cycle. You have an entirely new set of embryos. And her husband was successful in saying, hey, I didn't consent to those. That was a different consent. I never went through that. I never agreed to that. That was different. And so that's the, therein lies the issue. The issue is that there was never a consent signed for that second procedure, that second IVF treatment cycle, which, albeit, in my opinion, Your Honors, a very easy burden for FCI to fix. They could have very easily had her sign a brand new consent for treatment, allowed her to have her husband come in, sign a new dissolution of marriage agreement for those embryos, and that would have the issue. It would have resolved the issue and there would have been a very low burden upon FCI for that to occur. So for the reasons that you have a person going in for a trusted activity, she believes that she's being taken care of, she believes that they are experts in this field and that they know what is required of them to perform these procedures, to entrust the protections and security of these embryos, and that fell flat. I believe that this imposes a duty upon FCI, especially in the gravity of the situation. I have to go back to this new consent form. So everybody seemed to be operating under the assumption that the consent form that was signed at the outset continued throughout the fertility process. Correct. Somebody from the hospital told her that, she thought that. I don't know what her husband thought, but everybody seemed to think that. And you're saying that they had a duty to, I'm not sure, notwithstanding that everybody was acting under that assumption, their duty was to come up with a new, and we're calling it consent to treatment, but it really went far beyond consent to treatment. It went to all these directives. Agreed, Your Honor. I think the assumption of the parties was incorrect, and that was primarily because the consent form only specified in the singular the treatment. It did not say multiple instances. You're consenting to this IVF cycle, not cycles. So it was consenting to one instance. The assumption in what my client was told was that it would carry through across over the year, and as many cycles within a 12-month period. However, the language of the consent itself was for one instance. And why do they have any duty to protect her against her husband? I mean, why is that part of their duty? I think it's part of their duty because this is a sensitive area that they know, they're aware of. There is, I believe in my brief, I cited a case from back from 2012 that the duties of a fertility center have not been fully fleshed out by Illinois law. And so there was a law that was passed in 2015, I believe it was the Illinois Parentage Act, that went through and talked about consents, talked about consenting for both parents, for the event of dissolutions. If you withdraw your consent under the law, you are not considered a parent by Illinois. So there would be no harmful repercussions of child support, et cetera, that would result from that. Now the issue is, why do they have a duty to protect from the husband? They know, and they've already assumed that there could be a dispute with the two parents, with the husband, with any of the parents, honestly. And that's why they have put it in their consent form. So it was foreseeable that there would be a dispute. It was foreseeable that there would be some sort of contention. But my argument, Your Honor, and plaintiff's argument here is that they were not sufficient in their protections, and they did not rise to that level of duty that was imposed by the trust that my client placed upon them, the sensitive nature of what was going on, the possibility for extreme harm if they breached that duty. So in essence, I'm focused on their duty in both crafting their consent and their ability to protect their patients. And just go back for one second. Yes, Your Honor. I think you acknowledge that the law here is very undeveloped. What similar kind of duty can you point to that would suggest that they had a duty, any duty, in this instance to protect her right to the embryos if she and her partner got into a disagreement? I realize they had a consent form, but what parallel duty can you point to that suggests that the clinic here had a duty in this instance? I would argue that it is similar to any other medical consent. Any other medical consent form has to be explicit and has to completely outline what the procedure is. And there was no deviation in the procedure. The procedure was exactly the procedure that they performed. Correct, Your Honor. So it goes far beyond that. After the procedure, we're going to protect you from your neighbor not letting you in the house. We're going to protect you from these things that are going to happen after the procedure. Where does that duty come from, or what parallel duty can you suggest exists? Similar to medical negligence, it's not just about the consent. It's about the follow-up care. It's about what happens after. It's about the protections that the doctor imposes upon an individual as they're going through treatment. So that simple consent, yes, it's crafted in a certain way. But if someone finds out later on that they took out an ovary, later on that they didn't know they took out, you're talking about a consent that wasn't sufficient, a medical doctor who didn't do something, and then proceeded to not follow up, to not do something, to do something that was inappropriate or failed in their care. I believe that should be extrapolated the same way. Here we have a duty that was imposed by both their position as a fertility center, their protections that was foreseeable, and the fact that, I will slightly disagree with you, Your Honor, and the fact that the consent form here was for a procedure, but everyone agreed that procedure was part of it. The problem is the second IVF cycle, whether or not that consent form was sufficient to cover the additional cycles in treatment. We're alleging that it was not. We allege that that was not a consented-for procedure. She did not go through that procedure with a new consent form, nor did her husband, because it was her belief that it was consented-for through the original consent form, but the consent form itself did not cover multiple procedures. So the language of the consent itself was the problem. Had they been more diligent in their... Has anybody made a finding that this consent form did not cover all the procedures? I know that that's what the husband's position was and that's what the divorce court's initial position is, but there's never been a finding, has there? No official finding of that, yes, Your Honor. But the argument here is that the divorce court essentially discredited the consent form as a reason to provide my client the embryos. So she had to go to a hardship proceeding, something to show that she deserved those embryos in this instance, that she had it to happen because she is otherwise infertile, because she is of a certain... So it's your position, and I don't think this is clearly debriefed at all, but it's your position that the consent form in the end did her absolutely no good in divorce court. Correct, Your Honor. So given that information... And where in the record is that made clear, if anywhere? I think, Your Honor, in all of the complaints that it is very... It is outlined in the facts that we alleged that the consent form was entered into, that it was discredited by the court, and that it proceeded to lack a certain specificity in its drafting, which was the entire crux of our first and second amended complaints. Judge Esrig decided that it was insufficient and then struck and dismissed out negligence and breach of fiduciary duty on the belief that there was no duty imposed and that there was no duty alleged. We believe that the facts in all of those complaints, even the third amended complaint, which was technically stricken by the court, had all of those allegations still pursued for appeal and for your appellate review. So I believe our arguments that the consent form is insufficient has been well documented in the record, well documented in each of the allegations and each of the amended complaints that we did. I apologize if it wasn't as clear in the briefs. I thought that we were clear on that. Indulge me with this hypothetical. What if you had the form you're dreaming for? You have. What difference would it make? If you had a clear form, Your Honor, my client could easily have filed for summary judgment and gotten out of that divorce proceeding with her embryos immediately. There would be no genuination of material fact. It would be very clear, based upon the language and formation of the contract, that she would be able to enter in, get an order from the court, and walk away with her embryos within a few months. But you don't know that for certain. I can't say for certain, Your Honor, but it would be my belief that it should be. You're saying the defect was that it didn't clearly say this procedure on this day. Yes, Your Honor. But it also, that form, said in the event of divorce that they had not yet been divorced. So did it need to say from the moment? I mean, what would that form, you know, what does this perfect form look like? Because it seems to me that the contest first that he raised that worked with Judge Shapiro was, oh, I don't think it covers this procedure, but he could have raised other contests. He said, we're not divorced yet. He could have said, he could have filed a million problems. Maybe he would challenge it on some public policy ground. Your Honor, he could very well have made such arguments, but I still do not think that those would carry in the event that you had a temporary defect. I don't think they would have taken as much time as it did in this case, Your Honor. With that being said, regarding the breach of fiduciary duty, I believe we've gone through the duty allegations regarding to negligence. Why is it not duplicative, that claim? Your Honor, I believe it would be because there is a duty of care that is imposed by FCI, but I think that a breach of fiduciary duty is imposed in a different way. I think that they have a duty of care as a medical provider and not just as a corporation. We allege that there's a breach of fiduciary duty on behalf of Dr. Kaplan, specifically as the individual, the physician who was providing care. We allege that there was a fiduciary relationship given the patient-doctor relationship there. I know there were some arguments by defense counsel regarding the... How did the physician breach his duty? I mean, what does he have to do with respect to the actual, I guess, drafting of the form? Your Honor, I believe that his duty was beyond merely the form, but also his representations to my client that the form would be sufficient and would protect him. He's getting legal advice. He's not getting legal advice, Your Honor. But he is treating my client. He's saying that this is a facility where you would be protected, where we could do these treatments, and everything would be included in that. So we harvest, we do the treatments, we store, we freeze, and then we implant. We do all of it. So everything is encompassed in this facility, and all the protections that come with it should be there. But did he address the issue of divorce? I thought it was the nurse that apparently... I don't believe he addressed the issue of divorce. I believe it was the nurse. Okay. So he only dealt with the physical treatments. Correct, Your Honor. Okay. So in that same regard, I believe that a breach of fiduciary duty is nuanced. I do not believe it is duplicative in this case, but even if it was, it can be pleaded in the alternative with regard to negligence. I believe the duties are slightly different, and given the special relationship, it was going to address the defense counsel had raised that we had waived the argument because it was not in our initial briefs. I disagree with the characterization that any of the waiver arguments have water. In this case, we were very clear that we discussed a relationship between both Dr. Kaplan and FCI. We discussed them as agents in our motions to dismiss, responses to a motion to dismiss. I think it was replete within the record that that was included, so I don't believe those waiver arguments have any hole in the water. Your Honor, I'm not sure how much time I've gone through. I believe I'm a little over time. So, Your Honor, please inquire. I will conclude. Your Honor, given the information that we have in front of us, given the facts that we have alleged in our complaint and the facts we've alleged here, I believe that my client was due the protections that were owed to her. I believe that they had a duty to protect. I want to stop you before you wind up with just one question. So your argument today, which I think is slightly different than your argument in your brief, your argument today is that this consent that she signed gave her absolutely no protection from her husband or entitlement to the embryos at any point. So then how can there be a breach of contract claim against anybody? Your Honor, I will agree with you on that. I think it was a breach of implied contract here because I think that there was an agreement that was made and the understanding of that agreement was that they had a level of, they had a writing that was signed by all parties that went through and detailed the events of a dissolution. I believe that they did not impose or they did not adhere to those terms of that contract and they did not go through it. So it's not the written consent form that you're saying was breached in some other agreement? No, I do allege that it was the written consent form, Your Honor. The question is one that I've actually wrestled with. You have a consent form, whether it is a contract or not, whether there's a duty or not, I believe is a question of fact. Was it a contract? The law can impose whether or not I've sufficiently pleaded a contract, but does it constitute an implied contract or does it constitute a contract? I believe that the jury should decide. I believe that the duty here is one, though the law imposes whether a duty has been sufficiently alleged and what duties those are, I believe is also in this case a question of fact because there are nuances here, there are factual provisions, there are things that need to be weighed. And so I think that this was improperly dismissed because there are factual issues that need to be decided by a trier of fact rather than the courts. So we are alleging all of these claims, but we are alleging them to a certain extent in the alternative because the factual allegations and what's going on is up in the air. Whether or not a jury will believe my client and will take it as true is a question, but I think it's a question of fact that should be decided by a jury rather than a court. So, Your Honors, for all of those reasons, I believe that the court's orders that dismissed my client's complaints should be overturned. I believe this should be remanded for further proceedings, and I believe my client should be given her day in court to determine whether or not the FCI truly is liable for the damages that they caused and the time that they wasted. Thank you very much, Your Honors. Thank you, Counselor. Whenever you're ready. May it please the Court. Excuse the dark glasses. I just had cataract surgery and the bright lights seem to have got to me. Hugh Griffin on behalf of the FCI defendants and also Dr. Kaplan. Of course, all members of the Court have touched on points I'm going to make, but let me start with the point that Justice Mikva made. What did this consent form say? Well, what it said was in the event the patient and the spouse are divorced, it didn't say in the event they're separated or in the event they're in some kind of litigation and divorce proceedings ongoing. In the event they are divorced, the plaintiff, the patient, will have the sole possession and control of the embryos, exactly the relief that's set out in the consent form. And that's exactly what happened. If I can take you to page C-493, paragraph 54 and 55 of the Second Amendment complaint, 54 says, On September 13, 2022, Judge Shapiro entered a final judgment order in favor of Andrea Miller in granting her complete control over the embryos for any purpose. The same order also stated Rapid Alliance has no right to, no interest in, no control over the embryos. Paragraph 55, that's September 13th, that order. Paragraph 55, the divorce matter was then closed on October 13, 2022. So why are we here? And the answer, I guess, is because Mr. Lyons, from the get-go, once they were separated, decided and told FCI, I'm not going, I'm not going to comply with this. I don't want to. I mean, you can understand it. You're going through a divorce. Do I want an embryo? Am I, you know, my genes in there or not? But he said, he didn't say, Hey, I read this thing and it doesn't seem like it covered the second cycle. He just said, I'm not going to go along with it. But the court said, apparently, the record suggests, the court said, Jamie Shapiro said, I don't think it goes, I don't think it covers this cycle. That's what he said. And let's say, I think you still have to address the question of whether FCI had a duty to her as the patient to protect her belief that if, in case of any dispute, she would get the embryos. I agree with you about what the consent form says, but did they have a duty to have it say something else and have it say it clearly so that as soon as her husband went, you know, she got the embryos? Well, let me state what the court ruled, what Justice Esserich ruled. There's no need to exist between the parties to prevent the possibility of future litigation. So that's where the, I don't see how you get to any liability here unless you accept the idea that an agreement, somehow, even if drafted by general law, has to be impervious to litigation. It's an impossibility. Again, he was free to challenge this no matter what it said. Now, initially, apparently, the argument was made about the provision you're talking about, and initially the worst judge wasn't convinced it was conclusive. But the proceedings went on. We don't know, what, did he change his mind? Did he look at it again? Did he take some evidence? We don't know. Do you agree with, honestly, what was news to me in this argument, the contention of the plaintiff's counsel that in the end the consent form did Ms. Miller no good in the divorce proceeding? Do you agree with that, or do you not? He said in the end it didn't matter at all. They did a hardship hearing that didn't even look at the consent. Well, again, I can't. So we don't have the proceedings. We don't know what went on. I don't know if I can agree with that. I don't know either. Counsel, if your client believed, based on the consent form, that the embryos, in fact, belonged to the plaintiff here, why did they stop the procedures at that point? There was no injunctive relief granted against your client or any party regarding these embryos. Why didn't they continue with the procedures? Well, I've got this consent form, and we're going to go through it. It's a little complicated, but I think if we do, you'll understand why they didn't. Well, I want you to just tell me. What way? Counsel, what this says is, upon divorce, she will get them. It doesn't say if there's a dispute, she gets them. It doesn't say. So your client was waiting on the judgment of dissolution to be entered before they would proceed? Okay. There's really two consents here. The first one talks about IVF consent, and that's the whole way it goes about where you harvest the eggs, then they're fertilized, then you see if you have a viable embryo, and then you implant to the mother. And that general procedure was consented to, but it was never done. The plaintiff never asked for that to happen. So what happens next? Well, we'll freeze the embryos. And now that's a whole separate section of this agreement, and it talks about what we'll do with the frozen embryos upon death of one of the parties, or simultaneous death, or divorce. But it doesn't say, in case there's a disagreement, the plaintiff gets the embryos. It says just the opposite, if I could just read a little bit of it. This is the first page of the disposition of frozen embryos, and it says C541. These frozen embryos are subject to the joint control of the couple, except as indicated herein. Any use, any use, donation, transfer, instruction, must be accompanied by the joint mutual written consent of the patient and the patient's spouse or partner. In the event of a disagreement, then this agreement will control all of the applicable law. Well, this agreement didn't deal with any time but F upon divorce. That's the only thing it dealt with. So in answer to your question, that's all about they both had joint control during this period of dispute. And under the law, I think FCI's position was I've got to see a court order. That's what I mean here. If you want these right now, before you even get divorced, I've got to see a court order. So I don't think there's any allegation here or any fact before the court that would say to, that would allow you to conclude that even if this had been drafted differently, or even if there had been two forms, that the husband wouldn't have challenged this. Again, when he called out, he said, I'm not doing this anymore. I'm not agreeing to this. So again, I don't think there's, I think you can look at it even from an approximate cause point of view, that the only reason, the only basis that there was litigation and I'm sure there were some attorney fees expenses incurred, was because the husband decided I don't want to do this. And ultimately he lost. But I don't think that gives rise to any cause of action on the behalf of plaintiff against FCI or Dr. Kaplan. Let me deal, really the only allegation I think that really goes to Dr. Kaplan is the battery claim. Well, what about that? If there's no consent that applies to this procedure, which is what the plaintiff is now saying that this consent does apply, then why isn't it a medical battery if you don't have a consent? Well, the procedure was, the only physical procedure there is a harvesting of eggs. Uh-huh. And he's saying, I think he's saying that this particular consent, there was no consent form signed for the second harvesting of eggs. I think that's what he's saying. Well, that's not what his complaint said. His complaint alleges informed consent. Paragraph 215C5222, 522. Had plaintiff been aware that she would not be able to retain ownership of the embryos, plaintiff would not have consented to the procedure at that time, arguably, and would not have consented to any fertilization of the eggs. But, of course, she did retain ownership. So, you know, when you cite the law that says informed consent pertains to the duty to disclose material risks, and if the material risk doesn't materialize, you don't have an informed consent. You're right. So this allegation, there was no allegation that there was no consent whatsoever for this procedure. That's not in the complaint. The egg harvesting was against her will, none of that. Right.  If the Court has questions, I'll let Ms. Disher argue her case. Thank you. Thank you very much. Thank you. Counsel, whenever you're ready. Thank you. May it please the Court. Julie Disher on behalf of the defendants, Aparent, Gamil, and Cryovolt, and I'm going to refer to them collectively as the storage defendants just to make it a little bit easier. So you were storing the eggs? We were storing the eggs. There are no claims for breach of contract or medical battery against my client, so I'm only going to address the negligence and fiduciary duty claims. Ms. Miller has alleged that FCI failed to draft a consent form that would have prevented her husband from challenging her right to those embryos from the time he decided he didn't want to consent until the time the divorce order was entered. That's what she's saying, that FCI somehow had to draft a consent form that would have prevented her husband from withdrawing his consent until the divorce proceedings. And the issue here is clear. He had every right to consent her possession of those embryos under the consent form until a divorce dissolution order was entered. So I agree with Mr. Griffith that there's nothing that FCI could have done to write that into a consent form. He had the right to contest her possession of those embryos right up until the moment that a divorce order was entered. But beyond that... Even if he did have negligence, she did have a negligence claim against them. Where are you? What were you supposed to have done? That's where I'm headed next. Thank you, Justice McInnes. There are no allegations. The storage defendants were involved in writing the consent form, in giving her the consent form, or in discussing the consent form with her. A plaintiff said some things today about, you know, we're all in the same building, yada yada. That's nowhere in these pleadings. There's nothing in these pleadings that ties a parent, gamete, and cryovolt to FCI in that manner. The plaintiff has universally and accurately called this the FCI consent form. That's what it was. That's how it was labeled. There are no allegations in the Second Amended Complaint about any conversations or interactions between the storage defendants and Ms. Miller. There's no allegation that the storage defendants were involved in her fertility treatment in any way other than storing her eggs. There's a single factual allegation against my clients. They stored her eggs. Not even her embryos. The allegation is we stored her eggs. There's no allegation that Ms. Miller ever contacted the storage defendants and said, I want my embryos. There's no allegation the storage defendants ever told her, we're refusing to give them to you. What was alleged was that my defendants stored her eggs. There's no allegation they stored them negligently. There's no allegation that they were destroyed. And importantly, Ms. Miller doesn't really take issue with any of these points in her brief. Instead, she says FCI failed to provide sufficient informed consent. The FCI nurse told her her consent was good. And the court should not be misled by plaintiff's attempt to lump all of these defendants together. Throughout the briefing and during argument, well during argument today, he's primarily said the FCI defendants. But in his briefing, he's often referred to the defendants generally. And the court shouldn't be misled by that. We have very separate and distinct roles in her fertility care. The Illinois Supreme Court in Simpkins said that the threshold question in evaluating the adequacy of pleadings on a duty issue is whether a particular defendant contributed to the risk of harm alleged by the plaintiff. And there is no allegation here that the storage defendant contributed to any risk of harm. If that answer is no, then the plaintiff has to plead a special relationship. Ms. Miller never pleaded a special relationship with respect to the storage defendants in her second amended complaint. She never argued a special relationship until her motion to reconsider. And the relationship here does not fall within any of the four categories of special relationships. So that doesn't work either. The duty analysis with respect to the storage defendants begins and ends with whether these defendants contributed in any way to the delay in obtaining her embryos. And they did not. The breach of fiduciary duty claims, Justice McVeigh, you're correct, they are duplicative with respect to my defendants. And there's no allegation of a fiduciary relationship between the storage defendants and Ms. Miller. Usually when we're talking about a fiduciary relationship, we're talking about something like a wealth manager and an investor, where an investor places trust in the wealth manager, and the wealth manager does something to his own benefit and to the detriment of his client. There's no type of allegation like that here with respect to the storage defendants. There's no allegation that the storage defendants obtained a selfish benefit from exploiting their relationship with Ms. Miller. Therefore, we would ask that this Court affirm the Circuit Court's orders dismissing the negligence claims and the fiduciary duty claims against the storage defendants. I'll briefly address the CASMRS Act issue. Plaintiff raised the fact this is a unique circumstance involving fertility treatment. But in CASMRS Act, the Court was struggling with whether an embryo was a human being. It was a wrongful death case against a storage facility that destroyed, sorry, a transportation company that destroyed embryos. And the question there was whether the parents could pursue a wrongful death claim for the loss of the embryos and whether an embryo was a human being. Those were the unique circumstances in CASMRS Act. There's nothing like that here. This is a negligence informed consent case. I think at this point I'll just rest on my briefs. And we ask you to please affirm the Circuit Court's orders dismissing the entirety of the claims against the storage defendants. Thank you. Thank you. Your Honor, if I may, I know that technically my time has elapsed, but will you allow me a rebuttal? Yes. Thank you, Your Honor. Your Honor, I just wanted to briefly address the arguments that were made by defense counsel in this case. Mr. Griffin stood up here and told you that it was a bright-line rule in that FCI consent form that it was in the event of a divorce that my client gained access to her embryos and that she would be awarded that. It is actually not in the event of a divorce solely, but it is in the event of a divorce or dissolution of the relationship. In this case, defendant, FCI, and I would argue a parent and the storage defendants thereby were put on notice that that was a dissolved relationship. It is very much at the very top of that consent form in the area that says divorce or dissolution of relationship, which is kind of the crux of the case here. Dissolution of relationship. I know here we have the Illinois Marriage Dissolution of Marriage Act.  Is that phrase attempting to encompass those jurisdictions that refer to it as a dissolution of marriage as opposed to a divorce? I believe it would encompass any dissolution of the relationship in any way. So if the relationship dissolves, if it is divorced, if it falls apart one way or another because people may not be married in this particular instance, so it would be a dissolution of the relationship. So you're suggesting that it would also cover just a separation, not a legal separation, but just a separation of the parties? Correct, Your Honor. I think that that is what is contemplated by the consent form itself because people who are joining together and having embryos potentially through IVF may not be married. There may not be any legal coverage for that relationship. And so dissolution means any dissolution, any dissolving of the two being a couple should be considered part of this agreement. Now, I would note that Mr. Griffin, I apologize, Mr. Griffin indicated and read to you a portion of the consent form which he very quickly went over, except as otherwise provided herein. That particular portion indicates except as otherwise provided herein. That is what is provided herein. That was why my client believed that her protections were within that consent form. And so I believe that in and of itself indicates the consent form contemplated and foresaw this eventuality. With regard to a parent and GAMI, though they are the storage facility, we have alleged that there was an agency relationship both with FCI and with Dr. Kaplan in this case. Our agency allegations are throughout our complaint. We believe that they are part and parcel to FCI. They are part of the same overall and overarching entity that both provides all aspects of embryo, egg, and sperm storage. They are one in the same. They all provide the same service in different portions. So FCI does the medical procedures, harvesting, and then a parent GAMI cryovolts store those whatever has been harvested, whether it be sperm, egg, or embryo. Explain your liability theory. I'm sorry. So they're liable because they're an agent if FCI is liable? I would impose that if FCI is liable, if there is a duty upon FCI, a parent cryovolting GAMI would have a similar duty. They are agents of FCI, and they did not provide my client with her embryos. This is after she made requests to the facility to have her embryos provided to her. I believe that our agency relationships are, again, replete throughout our briefs, throughout our complaints. Defendant has argued that we have never argued a special relationship until our motion to reconsider. That is incorrect. Though we did not use the word special, admittedly, in our responses, we did go through the law outlining that the relationship has to be one of superiority. So in that case, though the term is not used, the substance of the claim, which is in this case a medical facility that is providing a medical service to a patient, should have a special relationship, and that special relationship should be imposed. I believe that that was very clear both in, again, pleadings in both briefs and responses to motions dismissed. These are arguing that they're related to a medical provider, which is inherently under the law a special relationship that is not typically something that would be under a breach of fiduciary duty. So the last point I would like to make is that their defense counsel for GAMI, a parent, and the storage defendants argue that there needs to be a selfish benefit under the NEADA court opinion. That is incorrect. They are trying to impose an additional element to breach of fiduciary duty, which is not recognized by the courts. In that particular case, they were talking about a fraud allegation, stating that typically in this type of set of facts, there was a selfish benefit being taken by the defendant. I don't think that is applicable in this case, nor would it be imposing an additional element upon a breach of fiduciary duty under Illinois law. So for all of those reasons, I would urge your honors to overturn the trial court's rulings, and I appreciate your time. Thank you, counsel. Okay. Thank you, counsel, for excellent arguments today and an excellent briefing. The matter will be taken under advisement for further study and opinion.